IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF THE CELLULAR TELEPHONES ASSIGNED CALL NUMBERS (917) 755-5180 AND (720) 661-7672 | Case No. 1:20-mj- 173-01-AJ<br><br>**Filed Under Seal** |

**AFFIDAVIT IN SUPPORT OF**
**AN APPLICATION FOR A SEARCH WARRANT**

I, Special Agent Adalberto Garcia, being first duly sworn, hereby depose and state as follows:

**INTRODUCTION AND TASK FORCE OFFICER BACKGROUND**

1. I make this affidavit in support of an application for a search warrant under Federal Rule of Criminal Procedure 41 and 18 U.S.C. § 2703(c)(1)(A) for information about the location of the cellular telephone assigned call number (917) 755-5180 ("the 5180 Phone") with no subscriber name or address, whose service provider is AT&T, a wireless telephone service provider headquartered at 11760 U.S. Highway 1, North Palm Beach, FL, used by Edwin Salas ("SALAS") and the location of the cellular telephone assigned call number (720) 661-7672 ("the 7672 Phone") subscribed to Jefferson County Human Service, 900 Jefferson County PY, Suite 230, Golden, CO, whose service provider is Verizon Wireless, a wireless telephone service provider headquartered at 180 Washington Valley Rd., Bedminster, NJ, also used by SALAS (together the "Target Cell Phones"). The Target Cell Phones are described herein and in Attachment A-1 (5180 Phone) and A-2 (7672 Phone), and the location information to be seized is described herein and in Attachment B-1 (5180 Phone), and B-2 (7672 Phone). As described more fully in Attachment B-1 and B-2, this application requests data about the physical location

of the Target Cell Phones including but not limited to E-911 Phase II data (or the specific latitude and longitude or other precise location information) for a period of thirty (30) days.

    2.    I am a Special Agent with the Drug Enforcement Administration ("DEA") and have been so employed for approximately one year. I graduated from the DEA Special Agent Academy in 2019. Prior to that, I was employed as a Police Officer with the Nashua, New Hampshire Police Department for over ten years. For approximately four years, I was assigned to the Detective Bureau. For two of those years, I was assigned to the Nashua Police Department Drug Unit. While working in the drug unit, I was primarily assigned to the DEA High Intensity Drug Trafficking Area Task Force in the Manchester District Office ("MDO") where I was deputized as a DEA Task Force Officer. Since becoming a Special Agent, with DEA, I have been assigned to the DEA Cross Border Initiative ("CBI") located in Massachusetts. In addition to the DEA academy, I have attended narcotic and criminal investigation training classes put on by the New Hampshire Police Standards and Training Council, the DEA, and the Nashua Police Department. My duties and responsibilities include the investigation of federal crimes, including violations of 21 U.S.C. § 841(a)(1).

    3.    I have received significant training in the field of narcotics enforcement and investigations. Through my training and experience, I am familiar with the habits, methods, routines, practices, and procedures commonly employed by persons engaged in the trafficking of illegal drugs. Through my training, education, and experience, I have become familiar with the manner in which drug distribution organizations conduct their illegal activities, including purchasing, manufacturing, storing, and distributing narcotics, the laundering of illegal proceeds, and the efforts of persons involved in such activity to avoid detection by law enforcement.

4. I am familiar with the facts and circumstances of this investigation from my own personal participation and from oral and written reports given to me by other DEA Agents, Task Force Officers, and local police departments. Since this affidavit is being submitted for the limited purpose of establishing that probable cause exists to support the issuance of a search warrant, I have not included details about every aspect of the investigation. While this affidavit contains all the material information I am aware of that is pertinent to the requested search warrant, it does not set forth all of my knowledge about this matter.

5. Based on the facts set forth in this affidavit, I submit that there is probable cause to believe, and I do believe, that violations of Title 21, United States Code, Sections 841(a)(1) and 846 (conspiracy to distribute controlled substances) have been committed, are being committed, and will be committed by SALAS and others known and unknown. I submit that there is also probable cause to believe, and I do believe, that the location information described in Attachment B-1 and B-2 will constitute evidence of these criminal violations and will lead to the identification of individuals who are engaged in the commission of these offenses.

## PROBABLE CAUSE

6. This affidavit contains information provided by a confidential source, CS-1. CS-1 is a confidential source providing information to a DEA division outside of New England. CS-1 has no criminal convictions and has never provided information to work off pending drug charges. Instead, CS-1 provides information to the DEA in exchange for money. CS-1 has worked for DEA for a number of months and has provided reliable information that has been corroborated by other investigations and has led to arrests and seizures.

7. According to CS-1, he/she is personal friends with Edwin Salas who talks to CS-1 about his drug trafficking business. CS-1 has never engaged in drug deals with SALAS but knows

about his business through their conversations. CS-1 first told agents about SALAS in March 2020 at which time CS-1 said that SALAS was distributing heroin and fentanyl in Massachusetts, New York, and New Jersey. CS-1 believed that SALAS resided in Boston but I believe he lives in Nashua, New Hampshire. According to CS-1 at that time, SALAS used the 5180 Phone, the 7672 Phone, as well as a phone number with a New Hampshire area code, (603) 318-4627. CS-1 believed that SALAS had a source of supply for drugs who was a Mexican national and that SALAS was expecting a shipment soon.

8.      In August 2020, CS-1 told agents that SALAS recently told him/her that SALAS had gone to Mexico to arrange a purchase of fentanyl, and returned with 20 kilograms of fentanyl. SALAS asked CS-1 if CS-1 could help SALAS sell any of the fentanyl. SALAS requested $60,000 per kilogram. I confirmed with immigration authorities that SALAS entered the United States at the San Diego border crossing from Mexico on August 30, 2020, consistent with CS-1's statements.

9.      At the direction of law enforcement agents, CS-1 told SALAS that he/she had a friend who wanted to buy some of the fentanyl. SALAS said that he would be happy to meet and/or speak to CS-1's friend but would only speak to him/her over WhatsApp.[1] SALAS provided CS-1 with the number for the 7672 Phone. Agents attempted to place calls to SALAS using both of the Target Cell Phone numbers but SALAS would not answer, reiterating that he would only talk over WhatsApp. Outside the presence of officers, CS-1 spoke to SALAS on WhatsApp over the

---

[1] I know, based on my training and experience, that WhatsApp is a text and voice messaging application that features end-to-end encryption, meaning that the company cannot read or store messages sent over the platform. This feature has made WhatsApp the preferred method of communication for drug traffickers or others engaging in illicit activity because it is very difficult for law enforcement to intercept or recover any communications. It is also difficult for agents to record conversations surreptitiously over WhatsApp and CS-1s conversations with SALAS have therefore not been recorded.

weekend of September 19-20 using the WhatsApp account associated with the 7672 number. In that conversation SALAS confirmed that he still had both Target Cell Phone numbers but that he would only talk over WhatsApp accounts associated with those numbers. He told CS-1 that he had his kids at home with him so was only working (referring to his drug business) on the weekends. Since it was a weekend, he also invited CS-1 to come meet him in New Hampshire, indicating that he was willing to sell some of the kilograms that weekend.

10.    I have received information about SALAS's drug trafficking activities from another source if information as well. SOI-1 has a conviction for disorderly conduct. In 2013, he/she cooperated with the Nashua Police Department after being arrested on criminal charges unrelated to drug trafficking. As a result of his successful cooperation at that time, his charges were dismissed. In addition, at that time, he provided information to the DEA which resulted in a substantial seizure of money and SOI-1 was paid as a result. SOI-1 is not actively cooperating but in January 2020, he/she provided me with information about Edwin SALAS. According to SOI-1, SALAS, who lives in Nashua, sells fentanyl and Percocent pills. SALAS has bragged about large numbers of Percocet pills he receives from Mexico and showed SOI-1 photos of large quantities of pills. According to SOI-1, SALAS employs a runner who also lives in Nashua. SOI-1 provided me with the same 603 telephone number for SALAS that CS-1 provided to the other agents. SOI-1 did not, however, provide me either of the Target Cell Phone numbers.

11.    The Nashua Police Department have confirmed that SALAS lives in Nashua. On September 8, 2020, they received a request for a welfare check from the mother of SALAS's children and were able to confirm that SALAS's children are living with him, consistent with what SALAS told CS-1.

12.     I have reviewed toll records for both of the Target Cell Phone numbers. I have confirmed that both are operational and in service but that very few calls go in and out over either number. This is consistent with SALAS's statements that he only communicates over WhatsApp accounts associated with both phone numbers. I know, however, that even if SALAS is not using the phones to make voice calls, as long as he has service from Verizon and AT&T (which he does), and has the phones turned on, I should be able to receive location data from the telephones.

13.     I know that it is common for drug traffickers to use multiple cellular phones and to switch back and forth between phones over time to attempt to avoid law enforcement detection. I also know that they sometimes compartmentalize phones, using different phones for different parts of their drug business (or keeping a "personal" or "clean" phone and a "business" or "dirty" phone). I know that drug traffickers may only take one of these phones with them at any time, depending on whether they are engaging in drug-related activity. Therefore, I believe that receiving the location information from both of these phones is necessary to get a complete picture of SALAS's movements and activities.

## The Requested Warrants

14.     I believe that location information obtained from the Target Cell Phones, when used in conjunction with other information obtained from cooperating individuals, and surveillance, may assist the United States in conducting surveillance of SALAS, locating the 20 kilograms of fentanyl or other drugs, identifying runners and other co-conspirators, and helping to identify other locations where they may sell drugs, operate a base of operations, and store drugs and drug proceeds.

15.     In my training and experience, I have learned that ATT & Verizon are companies that provide cellular telephone access to the general public. I also know that providers of cellular

telephone service have technical capabilities that allow them to collect and generate at least two kinds of information about the locations of the cellular telephones to which they provide service: (1) E-911 Phase II data, also known as GPS data or latitude-longitude data, and (2) cell-site data, also known as "tower/face information" or cell tower/sector records. E-911 Phase II data provides relatively precise location information about the cellular telephone itself, either via GPS tracking technology built into the phone or by triangulating on the device's signal using data from several of the provider's cell towers. Cell-site data identifies the "cell towers" (i.e., antenna towers covering specific geographic areas) that received a radio signal from the cellular telephone and, in some cases, the "sector" (i.e., faces of the towers) to which the telephone connected. These towers are often a half-mile or more apart, even in urban areas, and can be 10 or more miles apart in rural areas. Furthermore, the tower closest to a wireless device does not necessarily serve every call made to or from that device. Accordingly, cell-site data is typically less precise than E-911 Phase II data.

16. Based on my training and experience, I know that AT&T and Verizon can collect E-911 Phase II data about the location of the Target Cell Phones, including by initiating a signal to determine the location of the Target Cell Phones on AT&T or Verizon's networks or with such other reference points as may be reasonably available.

17. Based on my training and experience, I know that AT&T and Verizon can collect cell-site data about the Target Cell Phones.

## AUTHORIZATION REQUEST

18. Based on the foregoing, I request that the Court issue the proposed search warrants, pursuant to Federal Rule of Criminal Procedure 41 and 18 U.S.C. § 2703(c).

19.     I further request, pursuant to 18 U.S.C. § 3103a(b) and Federal Rule of Criminal Procedure 41(f)(3), that the Court authorize the officer executing the warrants to delay notice until 30 days after the collection authorized by the warrants has been completed.  There is reasonable cause to believe that providing immediate notification of the warrants may have an adverse result, as defined in 18 U.S.C. § 2705.  Providing immediate notice to the user of the Target Cell Phones would seriously jeopardize the ongoing investigation, as such a disclosure would give these people an opportunity to destroy evidence, change patterns of behavior, notify confederates, and flee from prosecution. *See* 18 U.S.C. § 3103a(b)(1). As further specified in Attachment B-1 and B-2, which are incorporated into the warrants, the proposed search warrants do not authorize the seizure of any tangible property.  *See* 18 U.S.C. § 3103a(b)(2).  Moreover, to the extent that the warrants authorize the seizure of any wire or electronic communication (as defined in 18 U.S.C. § 2510) or any stored wire or electronic information, there is reasonable necessity for the seizure for the reasons set forth above.  *See* 18 U.S.C. § 3103a(b)(2).

20.     I further request that the Court direct AT&T and Verizon to disclose to the government any information described in Attachment B-1 and B-2 that is within the possession, custody, or control of AT&T and Verizon.  I also request that the Court direct AT&T and Verizon to furnish the government all information, facilities, and technical assistance necessary to accomplish the collection of the information described in Attachment B-1 and B-2 unobtrusively and with a minimum of interference with AT&T or Verizon's services, including by initiating a signal to determine the location of the Target Cell Phones on AT&T or Verizon's networks or with such other reference points as may be reasonably available, and at such intervals and times directed by the government.  The government shall reasonably compensate AT&T and Verizon for reasonable expenses incurred in furnishing such facilities or assistance.

21. I further request that the Court authorize execution of the warrant at any time of day or night, owing to the potential need to locate the Target Cell Phones outside of daytime hours. I declare that the foregoing is true and correct.

Dated: September 23, 2020            /s/ Adalberto Garcia
                                                          Adalberto Garcia
                                                          Task Force Officer
                                                          U.S. Drug Enforcement Administration

The affiant appeared before me by telephonic conference on this date pursuant to Fed. R. Crim. P. 4.1 and affirmed under oath the content of this affidavit and application.

_____
Hon. Andrea K. Johnstone
United States Magistrate Judge
District of New Hampshire

Dated: September 23, 2020

## ATTACHMENT A-1

### Property to Be Searched

1. The cellular telephone assigned call number (917) 755-5180 ("the 5180 Phone") with no subscriber name or address, whose service provider is AT&T, a wireless telephone service provider headquartered at 11760 U.S. Highway 1, North Palm Beach, FL, used by Edwin Salas ("SALAS")

2. Information about the location of the 5180 Phone that is within the possession, custody, or control of AT&T including information about the location of the cellular telephone if it is subsequently assigned a different call number.

## ATTACHMENT B-1

### Particular Things to be Seized

All information about the location of the 5180 Phone described in Attachment A-1 for a period of thirty days, during all times of day and night. "Information about the location of the 5180 Phone" includes all available E-911 Phase II data, GPS data, latitude-longitude data, and other precise location information, as well as all data about which "cell towers" (i.e., antenna towers covering specific geographic areas) and "sectors" (i.e., faces of the towers) received a radio signal from the cellular telephone described in Attachment A-1.

To the extent that the information described in the previous paragraph (hereinafter, "Location Information") is within the possession, custody, or control of AT&T, AT&T is required to disclose the Location Information to the government. In addition, AT&T must furnish the government all information, facilities, and technical assistance necessary to accomplish the collection of the Location Information unobtrusively and with a minimum of interference with AT&T's services, including by initiating a signal to determine the location of the 5111 Phone on AT&T's network or with such other reference points as may be reasonably available, and at such intervals and times directed by the government. The government shall compensate AT&T for reasonable expenses incurred in furnishing such facilities or assistance.

This warrant does not authorize the seizure of any tangible property. In approving this warrant, the Court finds reasonable necessity for the seizure of the Location Information. *See* 18 U.S.C. § 3103a(b)(2).